NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| A.P. & V.P., | Case No: 17-13794 (SDW) (LDW) |
| Plaintiffs, | |
| v. | **OPINION** |
| GLADIBEL MEDINA, M.D., | |
| Defendant. | July 24, 2018 |

**WIGENTON,** District Judge.

Before this Court is Defendant Gladibel Medina, M.D.'s ("Defendant") Motion to Dismiss Plaintiffs A.P and V.P.'s (collectively, "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are the natural parents of A.V.P. (Compl. ¶¶ 4-6, ECF No. 1.) On December 23, 2015, two-month-old A.V.P. allegedly rolled out of his mother's arms, and while falling to the floor, hit his head on a television stand.[1] (*Id.* at 1[2], ¶¶ 23-26.) "[B]leeding from a gash on his

---

[1] This Court understands Plaintiffs' references to A.V.P.'s "caregiver" at the time of the fall to mean his mother. (*See id.* ¶ 30.)
[2] Plaintiffs have not numbered each paragraph in their Complaint. Therefore, this Court will cite to page numbers from the electronically-filed document as needed.

forehead[,]" A.V.P. was first taken to Christ Hospital and then transferred to the Children's Hospital of St. Peter's University ("St. Peter's"). (*Id.* ¶¶ 28-30, 38.)

On December 30, 2015, the Hudson County Division of Child Protection and Permanency ("Child Protection") took custody of A.V.P. based on its concern that he had been abused. (*Id.* ¶ 53.) On January 4, 2016, Child Protection petitioned the Superior Court of Hudson County for continuing custody of A.V.P., claiming that "abusive shaking had caused the injuries he sustained in his fall[.]" (*Id.* ¶¶ 54-55.) The state court granted Child Protection continuing custody of A.V.P. pending a fact-finding hearing. (*Id.* ¶ 54.) On January 6, 2016, A.V.P. was placed in foster care. (*Id.* ¶ 57.) Plaintiffs were permitted supervised visitation until August 2, 2016 when the custody petition was dismissed, and the family was reunited. (*Id.* ¶¶ 58, 109.)

At all relevant times, Defendant was the Medical Director of the Dorothy B. Hersh Regional Child Protection Center ("CPC")[3] at St. Peter's, and the "primary medical investigator on behalf of the State[.]" (*Id.* ¶¶ 7, 64.) On January 6, 2016, at Child Protection's request, Defendant examined A.V.P. "to investigate the cause of [his] injuries and determine whether they were accidental or inflicted[.]" (*Id.* ¶¶ 59-60, 66.) Defendant issued reports regarding A.V.P.'s condition on January 20, 2016, March 21, 2016, April 19, 2016, and August 1, 2016. (*Id.* ¶¶ 61, 102, 104-05.) Plaintiffs allege that the state court granted Child Protection continuing custody of A.V.P. on February 16, 2016, March 16, 2016, and May 11, 2016 based on the misrepresentations, omissions, and "junk science" in Defendant's CPC Reports. (*Id.* at 1-2, ¶¶ 93, 96, 98.) Specifically, they allege that Defendant "misrepresented that the cerebral spinal fluid [('CSF')] in A.V.P.'s extra-axial space . . . [were] chronic subdural hemorrhages that had been caused by inflicted head trauma[.]" (*Id.* ¶ 71 (internal quotation marks omitted).) According to Plaintiffs,

---

[3] The New Jersey Commissioner of Children and Families established the Dorothy B. Hersh Regional CPC as a regional diagnostic and treatment center for child abuse and neglect pursuant to N.J. Stat. Ann. § 9:6-8.99. (*Id.* ¶ 62.)

2

A.V.P. has "a condition where there is a little extra space between his brain and skull that fills with [CSF,]" that "predispose[s] a child to subdural and retinal hemorrhages with minor or no trauma at all." (*Id*. ¶¶ 8-9.) Plaintiffs also allege that a "December 26, 2015 MRI report identified A.V.P.'s prominent extra-axial CSF . . . collections[,]" a finding that Defendant omitted from her January 20, 2016 CPC Report. (*Id.* ¶ 72 (internal quotation marks omitted).)

On December 29, 2017, Plaintiffs filed a Complaint alleging that Defendant had violated their due process rights under the First, Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. (*See generally id*.) On March 16, 2018, Defendant filed the instant Motion to Dismiss the Complaint. (ECF No. 5.) On March 30, 2018, Plaintiffs filed their opposition, and on April 9, 2018, Defendant replied. (ECF Nos. 6-7.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

The general rule is that a district court may not consider material extraneous to the pleadings when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider a "document *integral to or explicitly relied* upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *Id.* "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)). Allowable documents include "undisputedly authentic documents if [a plaintiff's] claims are based upon these documents[.]" *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 772 (3d Cir. 2013). Because the Complaint is based on excerpts from Defendant's CPC Reports, this Court will consider the full reports dated January 20, 2016, March 21, 2016, April 19, 2016, and August 1, 2016, which are attached to Defendant's moving papers. (*See* CPC Reports, Raymond-Flood Decl. Exs. A-D, ECF No. 5-1.)

### III. DISCUSSION[4]

42 U.S.C. § 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

To bring a claim under § 1983, a "plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

#### A. State Actor

"'Under color of law' and 'state action' are interpreted identically under the Fourteenth Amendment." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). "Thus, . . . plaintiff[s] seeking to hold an individual liable under § 1983 must establish that [they were] deprived of a federal constitutional or statutory right by a state actor." *Id.* (citing *Benn v. Universal Health Sys.*, 371 F.3d 165, 169-70 (3d Cir. 2004)). To determine whether a defendant is a state actor or private person, courts have asked "whether there is such a close nexus between the [s]tate and the challenged action that seemingly private behavior

---

[4] Plaintiffs have brought this action "pursuant to one or more of 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. § 1985; the First, Fourth, Fifth, Sixth, Seventh and Fourteenth Amendment[s.]" (Compl. ¶ 1.) With the exception of Plaintiffs' § 1983 claim that their Fourteenth Amendment right to substantive due process was violated, their other causes of action are indiscernible. When it is unclear from the face of the complaint what claims are being asserted, "[n]either the Court nor Defendants should be required to sift through a tome of allegations to piece together those claims." *Doe v. Sizewise Rentals, LLC*, No. 09-3409, 2010 WL 3614200, at *3 (D.N.J. Sept. 8, 2010) (citations omitted); *Albrechtsen v. Bd. of Regents of the Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record." (citations and internal quotations omitted)). Therefore, this Court will only address Plaintiffs' § 1983 claim; to the extent that Plaintiffs intended to assert other causes of action, they are dismissed as insufficiently pled.

may be fairly treated as that of the [s]tate itself." *Id.* (citing *Leshko*, 423 F.3d at 339). The Third Circuit has outlined the following three tests to determine whether state action exists:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Id.* (internal quotation marks omitted) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)). Under the third test, "[t]he State will be held responsible for a private decision only when it has *exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State.*" *Id.* at 648 (quoting *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 76 (3d Cir. 1991)).

Here, applying the third test, Plaintiffs' allegations sufficiently established that Defendant was acting on behalf of the state when she provided the consultative reports at issue. Specifically, they allege that Defendant is the "primary medical investigator on behalf of the State," and that she examined A.V.P. at Child Protection's request to determine whether his injuries resulted from abuse. (*Id.* ¶¶ 7, 59-60); *see, e.g.*, *Billups v. Penn State Milton S. Hershey Med. Ctr.*, 910 F. Supp. 2d 745, 757 (M.D. Pa. 2012) (finding that individual doctors who were investigating rather than treating a child's injuries qualified as state actors). Additionally, she provided the CPC reports in her capacity as the Medical Director of the Dorothy B. Hersh Regional CPC, which is mandated under New Jersey law to "work closely with law enforcement and county child protective services agencies in the investigation and prosecution of child abuse[.]" (Compl. ¶¶ 62-63.) Therefore, Plaintiffs have established that Defendant was a state actor for the purposes of their § 1983 claim.

B. Due Process

"[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). However, such parental interests are not absolute. *Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997) (citations omitted). "Rather, it is balanced against the government's compelling interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves. Thus, parental rights may be infringed upon for the purposes of investigating allegations of child abuse." *R.B. v. Westmoreland Cty.*, 526 F. App'x 181, 185 (3d Cir. 2013); *see also Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 170 (3d Cir. 2016) (noting that the Supreme Court "has never found a substantive due process violation when state agencies temporarily remove a child, whatever the circumstances of the removal").[5]

"In bringing a substantive due process claim, one alleges that the [state] has abused its power in an arbitrary manner that 'shocks the conscience.'" *Mammaro*, 814 F.3d at 169 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-48 (1998)). "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d. Cir. 1999); *see also McCready v. Womble*,

---

[5] This Court notes that child welfare workers are often granted absolute immunity "for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 495 (3d Cir. 1997). They are also frequently protected by qualified immunity because "[c]aseworkers investigating allegations of child abuse . . . make difficult decisions based on imperfect information." *Mammaro*, 814 F.3d at 171. Although this Court will not reach an immunity analysis at the motion to dismiss stage, the same policy considerations that apply to prosecutors and social workers can be applied to physicians who assist with and are integral to child abuse proceedings. *See, e.g.*, *Billups*, 910 F. Supp. 2d at 765 (discussing whether defendant doctors who were "members of the Medical Center's Child Safety Team" were entitled to absolute immunity, but ultimately declining to decide the issue at the motion to dismiss stage); *see also B.S. v. Somerset Cty.*, 704 F.3d 250, 263 (3d Cir. 2013) ("[M]uch like prosecutors, child welfare workers 'acting in a quasi-prosecutorial capacity in dependency proceedings' are forced to 'exercise independent judgment' that should not be compromised by exposing them to the potential chilling effect of § 1983 liability." (quoting *Ernst*, 108 F.3d at 496)).

7

No. 11-7670, 2014 WL 1608446, at *15 (E.D. Pa. Apr. 22, 2014) (nothing that in the Third Circuit, there are "three possible standards that can be used to determine whether state action shocked the conscience: deliberate indifference, gross negligence or arbitrariness, or intent to cause harm." (citing *Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006))). Courts have evaluated conduct under the deliberate indifference standard where deliberation was possible and the state actor had "time to make unhurried judgments[.]" *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (internal quotation marks omitted). However, where the defendant did not have "the luxury of proceeding in a deliberate fashion[,]" courts have applied the gross negligence or arbitrariness standard, which exceeds deliberate indifference. *Id.* (citing *Miller*, 174 F.3d at 375).

Based on the Complaint, A.V.P. had already been removed from Plaintiffs' custody when Defendant was asked to evaluate the nature of the child's injuries. (Compl. ¶¶ 53, 59-60.) Defendant examined A.V.P. on January 6, 2016 and issued her first CPC Report on January 20, 2016. (*Id.* ¶¶ 60-61.) Because Defendant had time to issue her consultative reports, Plaintiffs' substantive due process claim must allege that Defendant acted with deliberate indifference when she provided her CPC Reports. *See Nicini*, 212 F.3d at 810.

Even accepting Plaintiffs' well-pled factual allegations as true, the complained-of conduct (*i.e.*, Defendant's omission of certain December 26, 2015 MRI findings from the January 20, 2016 CPC Report) does not rise to deliberate indifference. *See L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016) (explaining that deliberate indifference requires a "conscious disregard of a substantial risk of serious harm")*; see also Nicini*, 212 F.3d at 810 ("Mere negligence is never sufficient for substantive due process liability."). There is nothing to suggest that Defendant consciously disregarded the possibility that A.V.P.'s injuries were not related to child abuse. Rather, the CPC Reports that Plaintiffs rely upon in bringing the instant suit reflect that

Defendant's medical investigation was ongoing. The first report states that "medical work-up is not complete and metabolic testing through genetics is still pending to rule out an organic disorder potentially associated with the injuries found on this infant." (Jan. 20, 2016 CPC Report at 6, Raymond-Flood Decl. Ex. A.) Defendant's April 19, 2016 follow-up report notes that A.V.P.'s "retinal bleeding could have a medical etiology to account for the hemorrhaging other than abusive head trauma." (Apr. 19, 2016 CPC Report at 2, Raymond-Flood Decl. Ex. B.) Defendant's final report explains that testing revealed that A.V.P. has a "genetic abnormality . . . in a gene region known to be associated with bleeding disorders involving platelet function." (Aug. 1, 2016 CPC Report at 2, Raymond-Flood Decl. Ex. D.) Moreover, Plaintiffs acknowledge that Child Protection immediately requested dismissal of its custody petition based on Defendant's final report. (Compl. ¶ 108.) Based on the foregoing, the Complaint does not set forth facts to suggest that Defendant's alleged omissions or misrepresentations are conscience shocking.[6] Therefore, Plaintiffs' § 1983 claim is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. An appropriate Order follows.

s/ *Susan D. Wigenton*<br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig:      Clerk
cc:        Leda Dunn Wettre, U.S.M.J.
           Parties

---

[6] This Court further notes that Plaintiffs' references to "junk science" are not supported by the record and their reliance on *Han Tak Lee v. Glunt* is inapposite. *See Han Tak Lee v. Glunt*, 667 F.3d 397, 400, 403 (3d Cir. 2012) (remanding habeas matter to permit discovery and declining to reach petitioner's argument that "his continued incarceration [was] unconstitutional because his convictions [were] predicated on what new scientific evidence has proven to be fundamentally unreliable expert testimony, in violation of due process").